UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re ) | | |
| ) | | |
| SAMUEL ORTIZ, ) | Case No. 6:11-bk-07092-KSJ | |
| ) | Chapter 7 | |
| Debtor. ) | | |
| ) | | |

| | | |
|---|---|---|
| ANDREA LOPEZ ARAUJO, ) | | |
| ) | | |
| Plaintiff, ) | Adv. Proc. 6:12-ap-00076 | |
| vs. ) | Adv. Proc. 6:12-ap-00077 | |
| ) | | |
| SAMUEL ORTIZ, ) | | |
| ) | | |
| Defendant. ) | | |
| ) | | |

| | |
|---|---|
| RAPHAEL A. BRANDAO, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| SAMUEL ORTIZ, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION GRANTING
PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiffs, Andrea Lopez Araujo and her son Raphael A. Brandao, moved from Brazil to the United States in response to the Debtor/defendant's marriage proposal to Araujo. Debtor promised to support Araujo and Brandao and signed the necessary Immigration Form-864 "Affidavit of Support." After a short marriage, Debtor and Araujo divorced. The state court

judgment of divorce finds the Affidavit of Support is enforceable, orders Debtor to pay Araujo pursuant to the Affidavit of Support, and orders Debtor to pay Araujo's attorney's fees and costs for the divorce and for enforcement of the Affidavit of Support.[1]

Araujo and Brandao seek summary judgment in these adversary proceedings on the basis that the debts arising from the Affidavit of Support constitute domestic support obligations under Bankruptcy Code Section 101(14A)[2] and are excepted from discharge pursuant to Section 523(a)(5). Araujo also argues the debt for attorney's fees and costs created by the divorce judgment is a non-dischargeable domestic support obligation. The Debtor did not respond to the motions for summary judgment. The Court will grant summary judgment in favor of each plaintiff finding that the debts are non-dischargeable domestic support obligations.

Araujo also seeks clarification of the status of Debtor's 401(K) from this Court. The Debtor obtained a Chapter 7 discharge on July 6, 2012. The automatic stay is no longer in effect and does not prevent Araujo from proceeding in state court to transfer her share of the asset to her own name. She may do so without further leave of this Court.

Araujo and Brandao, Araujo's minor son from a previous relationship, were residents of Brazil. Debtor was a United States citizen. Araujo and the Debtor began a romantic relationship over the internet. After visits in Brazil, the couple decided to marry. Araujo and her son came to the United States in January 2008, and Araujo and the Debtor wed shortly thereafter.

As a precondition to plaintiff's immigration to the United States, defendant executed an Affidavit of Support – Immigration Form 864 identifying Araujo and Brandao as immigrants he sponsored.[3] By signing the Affidavit, defendant agreed to "provide the intending immigrant any support necessary to maintain him or her at an income that is at least 125 percent of the Federal

---

[1] Adversary No. 12-ap-0076, Doc. No. 1, Exh. 1 ("the State Court Judgment").
[2] All references to the Bankruptcy Code are to 11 U.S.C. § 101 *et seq.*
[3] 8 U.S.C. § 1183a (2008). Adversary No. 12-ap-0076, Doc. No. 1, Exh. 2 ("Form I-864").

Poverty Guidelines for his or her household size."[4]  The purpose of the Affidavit of Support is to prevent otherwise inadmissible immigrants from becoming a public burden by requiring a sponsor to support them.[5]

The marriage between plaintiff and defendant soon ended.  The parties filed for divorce in Florida state court and, on October 2, 2010, the state court dissolved the marriage and entered the State Court Judgment.

The state court specifically found that the Affidavit of Support was enforceable, ordered Debtor to pay Araujo pursuant to the Affidavit of Support, and ordered Debtor to pay Araujo's attorney's fees and costs for the divorce and for enforcement of the Affidavit of Support.  The State Court Judgment also awarded Araujo one-half of Debtor's 401(K) from the date of marriage through October 2, 2009.  Other than to find the Affidavit of Support enforceable, the State Court Judgment does not address Debtor's obligations to Brandao.[6]

In May 2011, the Debtor filed Chapter 13 bankruptcy.  The case was converted to Chapter 7, on Debtor's motion, on February 24, 2012.  Araujo and Brandao each filed an adversary complaint and motion for summary judgment seeking a determination that the debts related to the Affidavit of Support and the State Court Judgment are domestic support obligations under § 101(14a) and not dischargeable under § 523(a)(5) of the Bankruptcy Code.[7]

A court will grant summary judgment under Rule 56 "when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party."[8] Plaintiff seeks summary judgment as to dischargeability of the judgment debt owed by defendant as a "domestic support

---

[4] Form I-864 at 6.
[5] 8 U.S.C. § 1182(a)(4).
[6] State court judgment ¶¶ 6.i., 10-12, & 14-15.
[7] Adversary Proceeding No. 12-ap-00076, Doc. Nos. 1 and 11 & Adversary Proceeding 12-ap-00077, Doc. Nos. 1 and 12.
[8] Fed. R. Civ. P. 56(a). *One Beacon America Ins. Co. v. Catholic Diocese of Savannah*, 2012 WL 1939104, 3 (11th Cir. 2012) (citing *Brown v. Sec'y of State of Fla.,* 668 F.3d 1271, 1274 (11th Cir. 2012)).

obligation." In a Chapter 7 bankruptcy, a debtor receives a discharge of most debts to obtain a "fresh start."[9] But, a debt arising from a domestic support obligation is non-dischargeable.[10]

The Debts to Araujo and Brandao Arising from the Affidavit of Support are
<u>Non-Dischargeable Domestic Support Obligations under 11 U.S.C. § 523(a)(5)</u>

A domestic support obligation is defined in § 101(14A) as a debt owed to or recoverable by a spouse, former spouse, or child of the debtor, in the nature of alimony, maintenance, or support, whether or not so designated.[11] The debt must have been established on or before the date of the bankruptcy by reason of a separation agreement, divorce decree, property settlement, order of court record, or determination of non-bankruptcy law.[12]

Courts determining domestic support obligation look at the substance of the agreement creating the obligation as to whether it constitutes alimony, maintenance, or support, largely disregarding what the agreement is called.[13] A "simple inquiry as to whether the obligation can be legitimately characterized as support, that is, whether it is in the nature of support" is all that is required.[14] A debt is "in the nature of support" if, at the time the debt was created, the parties intended the obligation to function as support.[15] "All evidence, direct or circumstantial, which tends to illuminate the parties subjective intent is relevant."[16] The key in determining whether a debt is a non-dischargeable domestic support obligation under § 523(a)(5) is the intent of the parties.[17]

Clearly the intent of the Debtor in signing the Affidavit of Support was to comply with the mandate in 8 U.S.C. § 1182 and to guarantee future support for the plaintiffs at no less than

---

[9] 11 U.S.C. § 727; *In re Chauncey*, 454 F.3d 1292, 1295 (11th Cir. 2006).
[10] 11 U.S.C. § 523(a)(5); *In re Benson*, 441 F. App'x 650, 651 (11th Cir. 2011).
[11] 11 U.S.C. § 101(14A).
[12] *Id.*
[13] *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001) (citing *In re Harrell*, 754 F.2d 902, 904 (11th Cir. 1985)).
[14] *Id.*
[15] *Id.* Key indicators of a domestic support obligation include the "intent of the parties or the state court in creating the obligation, and the purpose of the obligation in light of the parties' circumstances, particular financial circumstances, at that time." *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 725–26 (10th Cir. 1993).
[16] *Cummings*, 244 F.3d at 1266 (11th Cir. 2001) (citing *In re Brody,* 3 F.3d 35, 38 (2d Cir. 1993)).
[17] *Id.*

125 percent of the poverty level until the Affidavit of Support terminated by law.[18] The intent of the government, a party to the Affidavit of Support, was to ensure plaintiffs were adequately supported so as not to become burden on the public.[19]

Defendant swore he had the ability to support plaintiffs in the United States as required by United States immigration law and agreed to provide the support necessary to maintain plaintiffs at or above 125 percent of the poverty level. The intent of the parties in signing the Affidavit of Support, as reflected in the name of the agreement, clearly was to support plaintiffs financially.

To allow defendant now to discharge these obligations would contravene the purpose of § 523 of subordinating a debtor's fresh start to the more compelling interest of requiring debtors to pay all legitimate domestic support obligations.[20] Debtor specifically sought out a foreigner, Ms. Araujo, to bring to the United States to marry. In doing so, defendant accepted the responsibilities of the arrangement along with its benefits. The debts arising from the Affidavit of Support are non-dischargeable under § 523(a)(5). Plaintiffs' Motions for Summary Judgment are granted (Adversary Proceeding No. 12-ap-00076-KSJ, Doc. No. 11 and Adversary Proceeding No. 12-ap-00077-KSJ, Doc. No. 12).

The Debt to Araujo for Attorney's Fees and Costs Is a
Non-Dischargeable Domestic Support Obligation under 11 U.S.C. § 523(a)(5)

"An attorney fees award arising from a [domestic relations] action constitutes 'support' for the former spouse under 11 U.S.C. § 523(a)(5) where . . . the award is based on ability to pay."[21] In the State Court Judgment, the Court found "[t]here is a substantial disparity in the

---

[18] Five, and only five, conditions terminate a sponsor's obligation under an Affidavit of Support: 1) the sponsor's death, 2) the sponsored immigrant's death, 3) the sponsored immigrant becoming a U.S. citizen, 4) the sponsored immigrant permanently departing the United States, or 5) the sponsored immigrant being credited with a total of 40 qualifying quarters of work. *Cheshire*, 2006 WL 1208010, at *4 (citing 8 U.S.C. § 1183a(a)(2), (3); 8 C.F.R. § 213a.2(e)). There is no evidence any of these conditions has been satisfied as to either plaintiff.
[19] *Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1023 (N.D. Cal. 2008) (noting "A Form I-864 is a legally enforceable contract between the sponsor and both the United States Government and the sponsored immigrant.").
[20] *In re Stewart*, 190 F. App'x. 147, 149 (3d Cir. 2006).
[21] *Strickland v. Shannon*, 90 F.3d 444, 447 (11th Cir. 1996).

earning ability of the parties, wife is unable to pay her fees and expenses, and husband is in a much better position to pay her fees than she is."[22] Based on these undisputed findings, this Court finds the award of attorney's fees and costs in the state court judgment also is in the nature of support and is non-dischargeable.

Araujo's Motion for Summary Judgment is granted. The state court's judgment of $17,075 for Araujo's attorney's fees and costs incurred in the divorce is non-dischargeable under § 523(a)(5). Similarly, additional reasonable fees and costs incurred in the course of this proceeding are non-dischargeable.[23] A supplemental Final Judgment awarding plaintiffs' counsel reasonable attorney's fees and costs shall be entered after submission of an affidavit filed within 30 days of the Memorandum Opinion detailing fees and costs incurred in connection with these two adversary proceedings.

<u>Araujo May Proceed in State Court as to Her Interest in the 401(K)</u>

The State Court Judgment awards Araujo one-half of Debtor's 401(K) from the date of marriage through October 2, 2009. Araujo became an "alternate payee under a qualified domestic relations order."[24] Therefore, Debtor's 401(K) was never exempt from Araujo's claim.[25]

Because Debtor arguably had no exempt interest in that portion of the 401(K) to which Araujo was an alternate payee at the time he filed his petition, the automatic stay provisions of 11 U.S.C. § 362 likely never applied during the pendency of Debtor's case to prevent Araujo from pursuing her interest in the 401(K). In any event, the stay certainly does not prevent her from doing so now. Debtor received a Chapter 7 discharge on July 6, 2012. The automatic stay

---

[22] State court judgment ¶ 11. The state court made detailed findings regarding ability to pay and reasonableness of the fees. *Id.* ¶¶10-12.
[23] *In re Ginzl*, 430 B.R. 702 (Bankr. M.D. Fla. 2010).
[24] Fla. Stat. §222.21 (2)(d).
[25] *Id.*

is no longer in effect. As such, Araujo may proceed in state court to transfer her share of the asset to her own name.

In conclusion, the Court will simultaneously enter a separate Summary Final Judgment consistent with the Memorandum Opinion.

DONE AND ORDERED in Orlando, Florida, on October 31, 2012.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge